IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LEAH F. HALL                                                               PLAINTIFF

v.                      CIVIL NO. 04-2243

JO ANNE B. BARNHART, Commissioner
Social Security Administration                               DEFENDANT

## **MEMORANDUM OPINION**

Plaintiff Leah F. Hall brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act).

## **Procedural Background:**

The application for DIB presently before this court was filed on September 20, 2002, alleging an inability to work since May 6, 1996, due to degenerative bone disease associated with the shoulders, neck, back and knee pain. (Tr. 47-50). Plaintiff maintained insured status through September 30, 1996. (Tr. 14). An administrative hearing was held on March 18, 2003. (Tr. 263). On April 28, 2003, the ALJ issued an unfavorable decision. (Tr. 224-230).

On August 28, 2003, the Appeals Council vacated the April 28, 2003, hearing decision and sent the case back for a supplemental hearing. (Tr. 235-236).

A supplemental hearing was held on May 17, 2004, at which plaintiff was present and represented by counsel. (Tr. 284). By written decision dated June 24, 2004, the ALJ found that

plaintiff has an impairment or combination of impairments that are severe. (Tr. 23). However, after reviewing all of the evidence presented, plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 23). The ALJ found that prior to September 30, 1996, plaintiff retained the residual functional capacity (RFC) to perform a full range of medium work activity. (Tr. 23). With the help of vocational expert testimony, the ALJ found plaintiff would be able to perform her past relevant work as a fishing lure assembler. (Tr. 23).

Plaintiff appealed the decision of the ALJ to the Appeals Council. Plaintiff's request for review of the hearing decision was denied on October 15, 2004. (Tr. 4-6). When the Appeals Council declined review, the ALJ's decision became the final action of the Commissioner. Plaintiff now seeks judicial review of that decision. (Doc. #1). Both parties were afforded the opportunity to file appeal briefs; however, only defendant chose to do so. (Doc. # 9).

**Evidence Presented:**

There are two administrative hearings of record. The first hearing was on March 18, 2003, at which plaintiff and two witnesses testified. (Tr. 263-283). A supplemental hearing was held on May 17, 2004, at which plaintiff, two witnesses and a vocational expert testified. (Tr. 284-327).

At the March 18, 2003, hearing, plaintiff testified she last worked in 1994, at a car wash but stopped working due to joint pain. (Tr. 266, 272, 276). Plaintiff testified that in September of 1996, she experienced pain in every joint but did not have the financial means to seek medical treatment. (Tr. 267-268, 275). Plaintiff testified that she started seeking treatment from Dr.

2

Miranda in November of 2002. (Tr. 268). Plaintiff testified she also felt depressed prior to 1996, and had difficulty sleeping. (Tr. 273, 275).

With regard to education, plaintiff testified she started the fifth grade but quit school prior to completing the school year. (Tr. 273).

Ms. Debbie Hester testified she lived next door to plaintiff in 1996. (Tr. 269). Ms. Hester testified she saw plaintiff crawl up her front steps instead of walking and guessed it was due to pain. (Tr. 270). Ms. Hester testified she noticed plaintiff had difficulty walking in 1992, and her ability to walk appeared to worsen every year. (Tr. 278). Ms. Hester testified that as long as she has known plaintiff she has known plaintiff to get up throughout the night because of pain. (Tr. 279).

Ms. Shannon Brown testified she saw plaintiff once or twice a month in 1996. (Tr. 271, 282). Ms. Brown testified plaintiff drove to her house and spent a lot of time at her house but there were times plaintiff was not even able to get to her house and if she did she would need help up the porch steps. (Tr. 280). Ms. Brown testified she noticed plaintiff's depression and witnessed plaintiff cry in 1996. (Tr. 281).

At the supplemental hearing on May 17, 2004, the ALJ discussed the relevant time period of July 1, 1996, the date plaintiff was first insured, through September 30, 1996, the date plaintiff's insured status expired. (Tr. 287).

Plaintiff testified she was forty-eight years of age and had obtained a fourth grade education. (Tr. 290). Plaintiff testified she obtained a driver's license when she was sixteen but had to have the driving test read to her. (Tr. 291). Plaintiff testified she could read simple notes written from her sisters but could not read well. (Tr. 292). Plaintiff testified she did not write

3

well and could not make simple change at a store. Plaintiff indicated she last worked in 1994. (Tr. 293). Plaintiff testified she stopped working because of her back, hand, hip, leg, knee and ankle pain. (Tr. 295, 302). When questioned about her pain, plaintiff testified it was worse at the time of the hearing than it had been in 1996. (Tr. 295). In 1996, plaintiff testified she could sit for about thirty of forty-five minutes before she would have to get up and walk around. (Tr. 312). Plaintiff testified that in 1992, Dr. Martin had given her medication for depression but it did not help. (Tr. 303).

Ms. Hester testified at the supplemental hearing. (Tr. 313). Ms. Hester testified she had seen plaintiff crawl up her front steps and noticed plaintiff's lights would go off and on throughout the night. (Tr. 315-316). Ms. Hester testified that she also saw plaintiff crying quite a bit. (Tr. 317).

Ms. Peggy Orr, plaintiff's sister-on-law, testified in 1994, she would see plaintiff about once a month when she would come into town to see her parents. (Tr. 319). Ms. Orr moved to Arkansas in 1995, and testified at that time she would see plaintiff about once a week. Ms. Orr testified she could see that plaintiff was in pain when she looked at her face. Ms. Orr recounted a time when plaintiff got down onto the floor to pick something up but then was unable to get back up. (Tr. 320). Ms. Orr testified plaintiff would also cry at the "drop of a hat." (Tr. 321).

Ms. Tanya Owen, a vocational expert, testified plaintiff's past relevant work as a car wash cleaner is considered medium, unskilled work; a fishing lure assembler is considered light, semi-skilled work; and a hand packager is considered medium, unskilled work. (Tr. 324). After listening to the ALJ's first hypothetical question (Tr. 324-325), Ms. Owen testified the hypothetical individual would be able to perform all of her past work. (Tr. 325). If the additional

4

limitation of being able to perform only light work was added to the hypothetical, Ms. Owen testified the hypothetical individual would be able to perform her past work as a fishing lure assembler. If a sit/stand option were added to the hypothetical, Ms. Owen testified the hypothetical individual would be able to perform her past work. After listening to plaintiff's counsel's hypothetical question (Tr. 326), Ms. Owens testified the hypothetical individual would not be able to perform her past work or any other work. (Tr. 326).

With regard to the medical evidence, there is no pertinent medical evidence during the relevant time period. Plaintiff did seek treatment for pain in her back, knee, shoulder, wrist, hip and neck up until 1992. (Tr. 113-118, 120-125, 130, 135-143, 145-146, 159-160, 170-177, 183-185 ). In September of 1992, plaintiff saw Dr. Rick Martin for a follow-up for her back, neck and shoulder pain. (Tr. 113-114). Dr. Martin agreed with Dr. James S. Deneke's diagnosis of a combination of mild osteoarthritis and tendonitis of the shoulders and some degenerative disease of the spine. Dr. Martin also agreed plaintiff may have a personality disorder and overlay of depression aggravating her problems and causing sleep disturbance. Dr. Martin noted plaintiff asked about disability and he suggested plaintiff apply for food stamps and due to the nature of her job at the car wash a vocational rehabilitation program. In 1993, plaintiff sought treatment for a rash. (Tr. 113). The record indicates plaintiff did not seek treatment again until 2002. (Tr.162, 164, 166-168, 187-216, 261-262).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal

6

an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 404.1520.

**Discussion:**

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on September 30, 1996. (Tr. 287, 51). Accordingly, the overreaching issue in this case is the question of whether plaintiff was disabled during the relevant time period of July 1, 1996, the date she attained insured status, through, September 30, 1996, the last date she was in insured status under Title II of the Act.

In order for plaintiff to qualify for disability benefits she must prove that, on or before the expiration of her insured status she was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. *Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984). The medical evidence of plaintiff's condition subsequent to the expiration of plaintiff's insured status is relevant only to the extent it helps establish plaintiff's condition before the expiration. *Id. at* 1169.

We now address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including

evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated plaintiff's subjective complaints. Although plaintiff contends that her alleged mild osteoarthritis and tendonitis of the shoulders, some degenerative disease of the spine and depression were disabling prior to her date last insured, the evidence of record does not support this conclusion. In evaluating plaintiff's subjective complaints the ALJ noted plaintiff stopped seeking treatment for pain in her joints in 1992, and did not resume seeking treatment again until 2002, six years after the expiration of her insured status. *See Novotny v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure seek treatment inconsistent w/allegations of pain). The ALJ also pointed out that in September of 1992, the last time plaintiff sought treatment for pain prior to the expiration of her insured status, Dr. Martin, her treating physician, recommended that plaintiff apply for food stamps and vocational rehabilitation. While Dr. Martin recommended plaintiff discontinue working at the car wash due to the change in temperatures and plaintiff

8

being wet all the time, he did not place any limitations on plaintiff's activities and did not recommend that she stop working.

Although plaintiff contends that her failure to seek medical treatment is excused by her inability to afford treatment, plaintiff has put forth no evidence to show that she has sought low-cost medical treatment or been denied treatment, due to her lack of funds. *Murphy v. Sullivan*, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). Furthermore, the evidence indicates plaintiff continued to afford to smoke one to two packages of cigarettes a day in August of 2002. (Tr. 199). As such, we cannot say that her financial situation prevented her from receiving medical treatment.

As for plaintiff's alleged depression, the medical record reveals Dr. Martin and Dr. Deneke thought plaintiff might have a personality disorder and/or some depression in 1992, they did not place any limitations on plaintiff and treated her medication. There is no indication that plaintiff ever sought treatment from a psychologist or psychiatrist or that such treatment had been recommended. *See Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability). Furthermore, plaintiff indicated in the forms she completed for the SSA that she had never sought treatment for emotional or mental problems. (Tr. 65). Based on the record as whole, we find substantial evidence supporting the ALJ's determination that plaintiff did not have disabling depression.

As for plaintiff's intellectual abilities, plaintiff testified she attended formal education up through fifth grade, was not able to read or write well and had problems making simple

AO72A
(Rev. 8/82)

change. However, in 1992, plaintiff reported to Dr. Deneke that she had entered the eighth grade. (Tr. 116). She also reported that she was a shift supervisor at the car wash. (Tr. 124). While the record does not establish plaintiff attended many years of formal education, based on the record as a whole we find substantial evidence supporting the ALJ's determination that plaintiff maintained the intellectual abilities to perform her past work.

Plaintiff's subjective complaints are also inconsistent with evidence regarding her daily activities. In a Supplemental Outline dated September 20, 2002, plaintiff indicated she could take care of her personal needs, perform some household chores, prepare meals, drive and go to the Post Office. (Tr. 72-73). In 2002, Dr. Miranda also wrote a letter stating that plaintiff was the "main care giver" to her disabled husband. (Tr. 166). This level of activity belies plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a plaintiff's subjective allegations of disabling pain. *See Hutton v. Apfel*, 175 F.3d 651, 654-655 (8th Cir. 1999).

The ALJ also considered the testimony of plaintiff's neighbor and sister-in-law. After hearing their testimony, however, the ALJ properly concluded that their testimony was not fully credible. As the testimony of family members and friends need only be given consideration and need not be considered credible, the ALJ properly discredited the testimony of the witnesses. *Lawrence v. Chater*, 107 F.3d 674, 677 (8th Cir. 1997).

Therefore, although it is clear that plaintiff suffers with some degree of pain, she has not established that she was unable to engage in any gainful activity prior to the expiration of her insured status. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability). Neither the

medical evidence nor the reports concerning her daily activities for the relevant time period support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

We next turn to the ALJ's assessment of plaintiff's RFC. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence," *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir.2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace," *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.1545(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel,* 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark.1987) (RFC was "medical question,"and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ found plaintiff was able to perform a full range of medium work prior to the expiration of her insured status. Plaintiff's capacity to perform this level of work is supported by the fact that plaintiff's examining physicians placed no restrictions on her activities during the relevant time period, that would preclude a full range of medium work. *See*

11

*Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability).

The ALJ also addressed Dr. Miranda's treatment notes and medical source statement. In September of 2002, Dr. Miranda opined that plaintiff had been unable to work since around 1996. *See Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995) (while treating physicians' opinions are ordinarily entitled to great weight, they are not conclusive and must be supported by medically acceptable clinical or diagnostic data). We note Dr. Miranda did not start treating plaintiff until 2002, six years after her insured status had expired. Based on the record as a whole, we find substantial evidence supporting the ALJ's determination that plaintiff was able to perform a full range of medium work during the relevant period of time.

Finally, we believe substantial evidence supports the ALJ's conclusion that plaintiff can return to her past relevant work as a fishing lure assembler. According to the Commissioner's interpretation of past relevant work, a claimant will not be found to be disabled if she retains the RFC to perform:

> 1. The actual functional demands and job duties of a particular past relevant job; *or*
> 2. The functional demands and job duties of the occupation *as generally required by employers throughout the national economy*.

20 C.F.R. § 404.1520(e); S.S.R. 82-61 (1982); *Martin v. Sullivan*, 901 F.2d 650, 653 (8th Cir. 1990)(expressly approving the two part test from S.S.R. 82-61).

Therefore, even though a claimant cannot perform the actual demands of her particular past job, if she can carry out her job as it is generally performed in the national economy, she is not disabled under the regulations. *Evans v. Shalala*, 21 F.3d 832, 834 (8th Cir. 1994). We note

in this case the ALJ relied upon vocational expert testimony in finding plaintiff's past work as a fishing lure assembler is considered light work. *See Gilbert v. Apfel,* 175 F.3d 602, 604 (8th Cir. 1999) ("The testimony of a vocational expert is relevant at steps four and five of the Commissioner's sequential analysis, when the question becomes whether a claimant with a severe impairment has the residual functional capacity to do past relevant work or other work") (citations omitted). Accordingly, the ALJ properly concluded that with a RFC for medium work plaintiff could perform her past relevant work as a fishing lure assembler.

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 3rd day of February 2006.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)